FILED
JAN 27 2010
[signature] CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| BRUCE EDGAR SMITH, | CIV. 08-4187 |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION |
| SOUTH DAKOTA DEPARTMENT OF CORRECTIONS; DOUGLAS L. WEBER, Warden, LAURA MAY, Coordinator of STOP, KRIS PEDERSON, STOP Program Director; | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are defendants' and plaintiff's cross motions for summary judgment (Docs. 95 & 100) and eighteen other motions filed by plaintiff (Docs. 54, 60, 61, 68, 69, 70, 71, 72, 73, 74, 75, 87, 90, 92, 93, 113, 115, and 116.)

## BACKGROUND

Plaintiff identified his lawsuit as a civil rights lawsuit under 42 U.S.C. § 1983 (Doc. 1, p. 4 of 9). His statement of the claim (Doc. 1) is that he has completed Steps 1, 2, and 3 of the STOP program, that he lost his certificate of completion for Step 1, but that he has his certificates of completion for Steps 2 and 3. He withdrew from Step 4 of the STOP program because he needed a long break. For relief he wants the STOP program to give him what he has accomplished on the computer screen and in his institutional file. He wants the STOP program to acknowledge and recognize that he has completed these steps so that he can obtain a commutation. He also asks for "money values of attorney's fees . . . and all money values that the court deems for all copy fees, pain and all suffering and all costs incurred." (misspellings corrected).

Defendants answered (Doc. 21) by denying all of plaintiff's claims except to admit that he is an inmate and that the defendants are in the positions in which the plaintiff alleged. Defendants specifically denied " all other allegations or claims made against [them] in the complaint," i.e. they denied that plaintiff has completed Steps 1, 2, and 3 of the STOP program. Defendants asserted seventeen affirmative defenses.

## UNDISPUTED FACTS

Notices of completion of Steps 2 and 3 were attached by the defendants to their statement of undisputed facts (Doc. 96-11 & 14). Plaintiff was first discharged from the STOP program on September 21, 2000, for unexcused absences (Doc 96-10 & 13). Later on April 25, 2001, plaintiff was discharged from the STOP program by mutual decision, given that plaintiff is "not eligible for parole until 2023 and he would benefit from having more time to take more responsibility for his sex offending history." (Doc. 96- 14 & 16).

Smith is an inmate in the South Dakota State Penitentiary (SDSP). He was convicted on eighteen counts of rape and for being a Habitual Offender. He was sentenced to five consecutive twenty year sentences on five of the counts. The sentences for the other twenty year sentences on the other counts of conviction are to run concurrently. His judgment of conviction was December 30, 1997. He received credit for 262 days already served before judgment was entered. His release date is October 7, 2048. His parole eligibility date is January 7, 2023.

Weber is the warden of the SDSP. May was STOP program coordinator. Pedersen was STOP program director. The STOP program is a sexual offender treatment program at the SDSP. While Smith was enrolled in the STOP program it was comprised of five steps. Smith asserts he completed Steps 1, 2 and 3. Defendants acknowledge in their brief that Smith has completed

Steps 1, 2, and 3. During the time which Smith was not otherwise enrolled in the STOP program (2007) the program was changed so that it is currently comprised of eight modules which take about one year to complete. Participation in the STOP program does not change an inmate's parole date or release date.

Smith agrees his release date is October 7, 2048, and that his parole eligibility date is January 7, 2023 (Doc. 103, p. 1 of 4, # 9). He asserts that if he were able to obtain a commutation his time would be cut in half (Doc. 103 p. 1 of 4, # 9). About the effects of the STOP program Smith says (Doc. 103, p. 3 of 6, # 28):

> I dissagree with this statement all together. "My Statement:" "Participation in the STOP program dose afect differant things like Commutations, Paroles, Custody Changes, Classifications Hearings, your files like what is in your Unit Files, here in West Hall, cell hall; then the Instatutional Files, which is in the Wardens office, then the Health Services files; The STOP Program makes reports to all these office files, and Electronically Stored Information, like the computer system, what ever information that they chose to release, even if its not true they can say anything what so ever.
>
> This is why they have been fighting me from obtaining the discovery that I have been requesting for so long here, this information could give me all the back up information that I can do that now.

Smith's summary judgment motion is constitutionally based "on all the facts, laws, Federal, State, and Local, and on the First and Fourteenth Amendants. . . ." (Doc. 100). In his statement of undisputed facts (Doc. 102) he includes:

> Plaintiff submits this statement of undisputed material facts, in suport of my motion for "Summary Judgment." (I REALLY WISH TO GO TO TRIAL HERE SIR)! Please your honor!!! . . .
>
> #7. I started the STOP Program Step 1, on March 21, 2000. My document DOC. 018.
>
> #8. I was terminated from STOP for walking out, on 9/21/2000. This document was

3

sent to Douglas L. Weber, Warden, by Kenneth Smith. DOC. 001.

#9. I completed STOP Step 1, on November 22, 2000, I went on to Step 2 then DOC. 019.

#10. I completed STOP Step 2, and went on to, step 3, 4/11/2001 DOC. 003.

#11. I was terminated from STOP Step 3, on 4/25/2001, for I got mad, really at myself, and walked out for a year then. DOC. 002.

#12. I left the STOP program for a year, I came back with a better attitude, Step 3, on April 19m, 2002. DOC. 020.

#13. I completed STOP Step 3, on 8/29/2002. Laura May, didn't want me to complete step 3, but Ken Smith said I did. I went on to STOP Step 4, Aftercare then. DOC. 004.

#14. I completed STOP step 3, on Augest 29, 2002, My Calender from that month showing my completion of step 3, I then started step 4, aftercare. I was having a lot of problems with Laura May, then, she allmost made me quit several times then. DOC. 021.

#15. I left the STOP program on July 24, 2003. I told Laura May, that I had, had enuff of her for once and for all. DOC. 022.

#16. There Exhibit 15, Laura May's document. I shows; "This serves to document that Bruce Smith #33417, will be leaving the STOP program." (I'll bet she was in seventh heaven). Then she says; "And he would benefit from having more time to take more responsibility for his sex offending history. "Dose this not show the spit, the callous disregard that she shows to me? Yes it dose!!!!

#17. The STOP Contract. There is two of these, dated: 8/15/2000, & 2/7/2001. They both show that I have this contract with the South Daktoa Depatment of corrections, for the STOP program. There is 20 conditions. I have no conflect with none of them excetp one. Condition #17. "I consent for treatment staff to release information to the Parole Boards, the Department of Corrections, and Classification Boards, in order that the progress and behavior may be reported." Now this sticks in my crow a bit! In Exhibit 4, The Affidavit of Kris Petersen's, #5. "Participation in the STOP program dose not change the date when an inmate is eligible for Parole, nor dose it change an inmates release date for his sentence." Now am I the only one that see's a problem with that statement there? Any information that is provided by the STOP PROGRAM, DEALING WITH SEX OFFENDERS, WOULD BE HELD

4

AT A VERRY HIGH LEVEL: Ied say. Why; becouse the STOP program deals with the sex offenders, when no one else wants to, its like we have the plag; so you know that when the STOP staff releases this information to; Central records, STOP Files, Medicl records, Unit files. Along with the ones above, these are the plases that the STOP program supplies what ever the information that they want to release, and plased on the computer system as well. So do we not beleave all that all the information that the STOP program is suppling this information to. Like the Parole Board? What ever information that they supply them it would have a direct a fect on any one, and Commutations, Paroles, Classifications, and Custody Changes, all the aspects. Just look at line #17. It tells the truth here, There Exhibit 7 now.....

#31. I filed three Appeals with the Department of corrections, Dated: 8/26/2008, - 8/28/2008,-and 10/22/008. All appeals was denied becouse of Laura May Saying That they don't have the step program any longer and that they don't honor that old program any more. I am suppling all three grevences documents, for the records here. DOC. 007. That date was for 12/5/2008.

My statement here: So they say that as of now, I have been credited for all STOP Steps, 1, 2, 3, and that I was in step 4, not completed. So they say that its "Mootness." But for 9 years they have been giving out the wrong information to the Parole Board, Classification Boards, Department of Corrections, Centrial Records, the STOP files, Unit files, like here in west hall, and Medical records, all these plases are getting the wrong information here. This information here can keep a inmate from getting ahead in prison.

If Laura May, and Kris Petersen, would list me with the completion of step 1, after they new; and I tell you this was done with contemp, and malissus disregrads to my rights, and did so purfactly knowing just what they was doing, and why they had done this, the changing all my records to show that I only completed STOP step 1, and not step 3, and step 4, 11 months in aftercare.

Then like DOC. 007. Document, the Inquirry date was when Laura May, loged on to this form in the computer system, that date was 12/5/2008. Time; 11:11:57am. As of that date my records did show that I had only completed STOP Step 1, only.

My certificats show that I have completed steps 1, 2, 3, & 4, aftercare 11 months then. But Laura May, and Kris Petersen, both distroied my STOP Files, just to get back at me, I guess, or what ever reason they did this, that answer we will probaley never have the true answer for, becouse thay will never say.

Please here my plee.

(Doc. 102)(sics in original).

In Smith's supporting brief he says (Doc. 101, p. 5 of 9, # 19):

> Fact 19. My chain of Evidence & Documents of Supporting Facts. DOC. 015. Maybe the STOP program has just recently stoped listing me as completing step 1, only now.
>
> But the damage has long been done here, for 9 years the "DAMAGE" has been done, and the program didn't care about straightening out ever in the past, as menny times that I tried to get this all straightened out. I don't beleave these, officals here. So I'll fall back on these Laws here: . . .

The laws that Smith mentioned are random legal principles, e.g. South Dakota state statute about state sovereign immunity in negligence or intentional tort cases; state statutes about ministerial duties; § 1983 reference to six categories of injury; a Seventh Circuit case saying a prisoner is entitled to judicial relief for a violation of his First Amendment rights, aside from any physical or mental or emotional injury; remedies against public entities; and punitive damages because defendants acted with evil motive or intent to defraud, or reckless or callous indifference.

## DISCUSSION

**Summary Judgment Standard.**

"Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Clark v. Kellog Co.*, 205 F.3d 1079, 1082 (8th Cir. 2000); Fed. R. Civ. P. 56(c). To avoid summary judgment, the non-moving party must "show that admissible evidence will be available at trial to establish a genuine issue of material fact." *Churchill Business Credit, Inc. v. Pacific Mutual Door Co.*, 49 F.3d 1334, 1337 (8th Cir. 1995). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and by affidavit or otherwise designate specific

facts showing that there is a genuine issue for trial." *Commercial Union Ins. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (internal quotation marks and citations omitted). "Summary judgment is an extreme remedy, to be granted only when no genuine issue exists as to any material fact." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997).

While prisoners are entitled to the benefit of liberal construction of their pleadings because of their pro se status, Fed. R. Civ. P. 56 remains applicable to them. *Quam v. Minnehaha County Jail*, 821 F.2d 522 (8th Cir. 1987). Courts must remain sensitive, however, to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and the Eighth Circuit has explicitly disapproved of summary dismissal of prisoner pro se claims without regard for these special problems. *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980) cert. den. 449 U.S. 1018, 101 S.Ct. 581, 66 L.Ed.2d 478 (1980). "When dealing with summary judgment procedures the technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

**Analysis.**

The essence of Mr. Smith's claim is that his completion of Step 1 of the STOP program was not acknowledged for nine years which has had in the past or could have in the future an adverse effect on his opportunity to receive a commutation of his sentence. It is undisputed that Smith completed Steps 1, 2 and 3 of the STOP treatment program.

There is no constitutional right to **commutation**[1] of sentence:

---

[1] Commutation is distinguished from parole. Commutation is a form of clemency which arises under SDCL § 24-14. Clemency includes pardon, commutation, reprieve, or remission of a fine or forfeiture. SDCL 24-14-2. Commutation is at the discretion of the governor.

> .... [A]n inmate has no " 'constitutional or inherent right' to commutation of his sentence," and second, that the inmate's expectation of commutation, resulting from the seventy-five percent commutation rate, is still no more than a "unilateral hope" when the statute conferring the authority to commute sentences is "expressly discretionary. ...
>
> The South Dakota statute, like the Connecticut statute in *Dumschat*, contains no definitions, no criteria, and no mandated "shalls." See S.D. Codified Laws Ann. ch. 24-14. It merely grants the Governor the power to delegate the authority to hear clemency applications to the Board. S.D. Codified Laws Ann. § 24-14-1. The Board then makes written recommendations to the Governor, who is not bound by those recommendations. S.D. Codified Laws Ann. § 24-14-5. Since the Board is not required to recommend commutation in any particular circumstances and the Governor is not required to follow the Board's recommendations, Peck cannot be said to have a statutorily created expectation of commutation. Thus, Peck is not entitled to a statement of the reasons for denial of his requests for commutation.

*Peck v. Battey*, 721 F.2d 1157, 1159 (8th Cir. 1983).

Smith has only a unilateral hope of commutation before his initial parole date of January 7, 2023. He has no constitutionally protected right to commutation. Likewise, regarding parole, he has not suffered a constitutional deprivation. Whether he is given credit for having completed Steps 1, 2, 3, and 11 months of Step 4 of the STOP program as it existed at the time he terminated or was terminated, or whether he must begin anew the modules of the current STOP program which was ordained during his absence from the program and which takes about one year to complete, Smith still has thirteen years before his initial parole date during which he can complete the STOP program.

The undisputed facts show that Smith has not been deprived of a constitutional right because there is no constitutional right to receive commutation of a sentence. Assuming the facts most

---

Parole, for convictions occurring after July 1, 1996, is automatically granted without a hearing if at the time of the inmate's initial parole date the prisoner satisfactorily complies with all pertinent prison programs while incarcerated. SDCL 24-15A-38. Smith's initial parole date is not until January 7, 2023.

8

favorable to him, i.e. that he was not given credit for finishing Step 1 of the STOP program, Smith has not demonstrated that he has been prejudiced by not receiving credit. His right to parole has not been prejudiced by the alleged failure to give him credit for completing Step 1 of the STOP program. His initial parole date is not until 2023. There is plenty of time for him to finish the STOP program before January 7, 2023.

## CONCLUSION

It is not necessary to address the issues about the defendants being sued in their official capacities rather than their individual capacities as a result of plaintiff's failure to indicate in what capacity the defendants are sued. Likewise, it is not necessary to address the issue about South Dakota's Eleventh Amendment immunity from suit.

Because there has not been a constitutional violation Smith's claim fails on the merits. For the same reason the affirmative defense of qualified immunity protects the defendants in their individual capacities, i.e. there is no constitutional right to commutation so a reasonable prison official could not possibly have known there was such a right, and there cannot possibly be a knowing violation of a constitutional right which does not exist. It is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 95) should be **GRANTED** and that Plaintiff's Motion for Summary Judgment (Doc. 100) should be DENIED.

Plaintiff's motions to amend his summary judgment motion (Docs. 115 & 116) and the sixteen other motions ( Docs. 54, 60, 61, 68, 69, 70,71, 72, 73, 74, 75, 87, 90, 92, 93, and 113) are not dispositive motions. The motions to amend (Docs. 115 & 116) are GRANTED and the balance of the motions are DENIED ( Docs. 54, 60, 61, 68, 69, 70,71, 72, 73, 74, 75, 87, 90, 92, 93, and 113).

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated January 27, 2010.

BY THE COURT:

John E. Simko
United States Magistrate Judge